And for the appellant, Mr. Loveless, and for the athlete, Mr. Doty. You may proceed. Thank you, Your Honor. Good morning. I'm pleased to report to Doty's counsel. Your Honor, the trial record indicates that on July of 2016, a 25-year-old Don Carl Netter was lured to a residence of a woman on Facebook, a Taylor Banks Banks with a promise of sex. It turns out that Taylor Banks Banks was actually a man, and that man's name was Channing Butler, and the residence was actually the Bigford Assisted Living and Memory Care Center. Channing Butler was a certified nurse's assistant working at Bigford, taking care of the residence there overnight. On that July night, Channing Butler led Don Trowell down a hall and told him that there was an old woman that he wanted Don Trowell to have sex with. When Butler opened the door to the room, Don Trowell saw a 90-year-old woman, Helen Kay, sitting in a chair. Helen was nearing the end of her life and had limited mental and physical ability. Helen died on July 23, 2014. In the summer of 2015, Channing Butler had invited multiple men to Bigford to join him in the overnight hours for sexual activities. While these multiple men were at Bigford, Butler would take photographs with his smartphone. Channing Butler pled guilty to three counts of a Class I felony, solicitation of aggravated criminal sexual assault, all arising out of his activities at Bigford, and was sentenced to 14 years. Butler had invited two other men, Frank Warren and Dean Goble, to Bigford on different nights. Both Warren and Goble pled guilty to their involvement. Warren being sentenced to 10 years and Goble being sentenced to 14 years. Don Trowell was the third man to be charged, did not plead guilty, went to trial, and received a sentence of 30 years. What is at dispute, or what was disputed at trial, was whether Don Trowell Netter was a victim of Butler's shenanigans or a willing participant in the deplorable sexual acts perpetrated at Bigford. The state's only witness to any of their crimes alleged against Don Trowell was Channing Butler. He testified at trial that he never, Butler never had a physical sexual relationship with Don Trowell. Butler had never met Don Trowell before. Butler's statement to police that he had an ongoing sexual relationship with Don Trowell for three years was not true. Butler's statement to police that he had a sexual encounter with Don Trowell at Bigford that night was also not true. Butler also testified that Don Trowell did not receive or try to receive oral sex from Helen. Helen did not perform oral sex on Don Trowell. Don Trowell did not put his penis in her mouth and start moving back and forth. Defense counsel then showed Butler at the defendant's exhibit number one a statement signed by Butler in which he stated that when Don Trowell Netter saw Helen, he shut it down completely, and that Don Trowell looked at the lady and said he didn't want anything to do with her. And that Don Trowell left shortly after seeing Helen. Of course, after he made these statements, the state then attempted to impeach him on his prior statements to the police, which they did, focusing on his statements about Butler wanting to have and having sex with Don Trowell and having a relationship with Don Trowell, and then also his statements that Don Trowell had come into the room and he had received oral sex from a lady there, all, again, inconsistent with what his statements were in his trial testimony. In addition to impeaching, the state also offered as substantive evidence two audio-video clips from an interview, one about Don Trowell putting his penis in Helen's mouth and Don Trowell hooking up with Butler and spending ten minutes in Helen's room. One of the most prejudicial pieces of evidence offered to the trial court, or the jury in this case, was People's Exhibit B-1 and how that was introduced. As Butler was testifying, the state attempted to lay a foundation as to that evidence. He was asked the following questions and gave the following answers. At the time you took this picture, Exhibit B-1, Helen Cade was present in the room. Is that right? His answer was yes. Question, at the time you took this picture, who else was in the room? Answer, Don Trowell. What was that serve? Answer, Don Trowell. Question, and by that you mean Don Trowell Netter, the defendant here? Yeah, yes. After Butler answered these questions and without admitting the photograph as evidence, the state moved to publish Exhibit B-1 to the jury, at which time the following exchange occurred. The state, Your Honor, I move to publish People's Exhibit B-1 to the jury. Defense counsel, objection, Your Honor. Court, the objection is overruled. It may be published. Defense counsel, Your Honor, there is no identification of that photograph. The court then incorrectly stated he said it was him. Defense counsel, pardon? The court, again, incorrectly stated he identified Mr. Netter as the person in the photograph. Defense counsel, I didn't hear it that way, Your Honor. I'm having trouble hearing, but I thought the question was the court interrupted Mr. McClellan. The objection is, defense counsel, was who else was in the room? The court responded, the objection is overruled. The state's second to last question then at the end of the direct examination was, and your testimony here today is that the penis depicted in People's Exhibit B-1 is the penis belonging to the defendant, Don Terrell Netter, to which Butler responded, yeah, I believe so, yes. Your Honor, the opponent argues in this case that the judge got this terribly wrong and essentially testified for Mr. Butler. Mr. Butler did not identify the penis in the photograph, and the judge jumped the gun and said that yes, he identified Don Terrell Netter's penis in that photograph. Well, how about the last statement, which was, I think I wrote it down correctly, yes, or yeah, I believe so, yes. Well, how does that not address your complaint about Judge DeFantis' ruling that it could be published? Your Honor, that reinforces the argument. You had a witness that throughout his entire testimony said that Don Terrell Netter did not have oral sex, did not put his penis in Helen Kane's mouth, and was clear that I cannot identify Don Terrell Netter in that photograph. The judge then interrupts and says, he identified, and then at the very end, that witness concedes to the judge. I mean, the judge has not only told the jury that the witness has identified something that the witness has not identified, but he's also told the witness that. So your argument would be then that this court should completely disregard, yeah, I believe so, yes? I believe that this court should disregard it because of the complete lack of credibility or lack of consistency on the part of Channing Butler. Channing Butler is all over the place. He's inherently incredible in his testimony. He contradicts what he told the police. He tells the jury that what he told the police was not true. Of course, the state, within their right to do so, impeached him, impeached their own witness, and then offered that substantive evidence. But now you have Channing Butler now contradicting himself. And for what reason? Why would he contradict himself based upon what he had testified earlier? Now at the very end, when asked that question, the question in and of itself should have been objected to. And your testimony here today is that the penis depicted in People's Exhibit D-1 is the penis belonging to the defendant. That wasn't the testimony there that day. That's what the judge said. Mr. Butler never said that. And the judge's weight of that statement, of identification that wasn't there, on such a highly prejudicial photo, there's no doubt that the minute the jury saw that photo that was published, and that Don Travnetter was sitting in the defendant's seat, that they were going to convict someone of doing something. And he was the only defendant there. Because you had to, I mean, it was a horrible, despicable act. But again, it wasn't a question of foundation. It was a question of relevance. Is that photo relevant when the witness cannot identify? I know the state will argue that, I would say it's circumstantial evidence, any process of elimination. So Channing Butler did say that Don Travnetter was in the room, that in the photograph you could see my hand, Channing Butler's hand, you could see Helen's face, so it must be Don Travnetter's penis in the photograph. And I understand that. And that would be a great argument in closing arguments. Or even an argument for, hey, we've established proper foundation in chambers, somewhere not in front of the jury than the court could rule. But there are alternatives to that. I mean, the fact that if Don Trav is the only person in the room other than Channing Butler, and it's not Channing Butler's penis, then it must be Don Travnetter's. Well, there is another possibility, it's that Don Travnetter's not in the room. Keep in mind, again, Channing Butler had invited multiple people over the summer of 2015 to Vickford to engage in sexual activities, two of which were charged and accepted plea deals and were sentenced. There may have been more. And he may have been mistaken about who was in that picture. But he said, I cannot identify that as Don Travnetter. He may have been mistaken that Don Trav was in the room that night when he took that picture, as he took multiple pictures. How many pictures were found on his phone? I don't know, Your Honor. That was an issue that was not brought up at trial. That, Your Honor, would argue that is part of the ineffectiveness of defense counsel in this case. One of the points that I bring up is that defense counsel seemed inept, admittedly inept, when it came to the digital evidence in this case, whether it had been the social media involved, the digital evidence with photographs, times, dates. The only photograph that was discussed at trial was that single photograph. Did discovery reach to the subject of additional photographs? I don't know, Your Honor. It wouldn't be in the record, and I wasn't part of it. How about, was it explored about the date the photo was taken? There was no challenge to the date. The officer, the detective who did the forensic analysis of the phone and did all that, I think, identified it as being taken on July 12th. There wasn't any challenge to that. So it was taken on the right, the correct date, according to what came out? Yeah, there's no evidence that, I mean, Don Travnetter did testify, even though he had three felonies that were used to, obviously, to impeach him. He testified that, you know, yeah, I was there, I went inside, I thought I was going to have sex with someone. I wasn't going to have sex with Butler. He said you can have sex with a 50-year-old woman. I go down at the end of the hall, I see a 90-year-old woman, and I'm out of there. So he testified, but there's no indication of what date he was even there. He didn't testify to what date. The only date comes from the July 12th photograph. Your Honor, there were other photographs that were introduced that we take issue with, specifically People's Group Exhibit C, C-1 through C-7. In summation, basically these photographs were offered to show the exterior and interior of Vickford. And they were offered to show because the defendant was saying, you know what, I recognize this is a residence. I didn't know this was a nursing home. I didn't know it was a nursing home that night. And then also later on when the police detective went to question Dr. Ell while he was in prison on another crime, he was asked, you know, were you ordered to a nursing home facility? He goes, no, I don't know what you're talking about. I don't know what this nursing home facility is. I've never been to a nursing home facility. So he denied going to a nursing home facility. And, of course, the state offered these photographs to indicate, you know, hey, this is obviously a nursing home facility, but there's a problem with those photographs. All those photographs were taken during the day. Was that the only difference in terms of what's depicted in the photo as compared to the scene on the evening of the occurrence? Yes. On cross-examination, Mr. Clark testified that the exterior photos do not represent how Vickford would appear at midnight or 3 a.m. So those are the only differences covered. Do you have any case authority that would support your position that because of the difference in the time of day that the photo was taken, that that would mandate that the exhibit not be at midnight? The one case that I believe actually the state had offered was, I believe it was People vs. West. And the defendant in that case took issue with photographs taken of an arson scene. And the photographs were taken three days later. And the court in that case said that that was essentially good enough, that three days later. But in that case, the issue wasn't night versus day as far as the appearance, but the issue was whether or not anything could have been tampered with or the scene photographs depicted what, you know, the arson looked like right after the fire. And the court went to great lengths to explain, hey, you know, if a fire scene is unsafe, the soonest they could get in was three days later. In this case, there's really no excuse for the state not to offer nighttime photos. And they should have been objected to, and they weren't. And so I realize there's a forfeiture issue, which I address on plain air, this being a closely balanced case, and it wasn't here to introduce those photographs. And your thought, your purpose is that undercuts, the introduction of them undercuts the defendant's position that, I didn't go to a nursing home. I went to what I thought looked like a house. Right. And that's the only reason I can think of why the state would have offered those. And I know that because that's what the state then argued. Right. But doesn't that itself get undercut by the fact that I'm assuming Channing Butler is dressed as a certified nursing assistant? I don't believe that in the facts of the case that there was a discussion of how he was dressed, on how he looked. And again, I think to the courts, even the director who was used to entering these photographs went on to explain to the jury this, and this is like, I'm guessing, a lot of the newer nursing homes. This isn't a six-story building or a sprawling. This is something that's designed to be kind of a cottage looking. It has assisted living in front and memory care in the back. And it's designed, according to the director, to have a homey feel to it, to look like a house, an apartment. So it was entirely reasonable for Dodd-Trump letter to mistake this young man of 25 who may have not had any experience with nursing homes. So, Your Honor, we challenge this based upon the insufficiency of the evidence that Channing Butler is just – his testimony is inherently incredible, that no reasonable jury should have believed him, and he was the only evidence, or he was the only witness offered by the state to indicate Don Terrell and his crimes. Along those lines, we also argue that the photograph itself should have never been admitted. Not only did the judge taint the jury by pointing out to the jury and the witness that the Dodd-Trump letter was in the photos, but that it shouldn't have been admitted. And then along the lines of several pieces of those evidence, we raise issues of ineffective assistance of counsel. I wanted to ask one more question. Sure. The forensic expert testified the photos hadn't been taken on a certain date, or produced on a certain date. Yes, that one photo, yes. But that date connects to nothing else in the case other than the fact that whatever occurred there apparently happened in July. Yes, I believe the timing as far as Don Terrell was there that summer, and I believe there was other information that he was there in July. But there is no specific – Don Terrell's letter does not say, nor does the state say, he was there on a specific date. The only date is the picture itself. And did Butler say he brought other men there during the summer and during July? Yes, yes. He brought other men who were charged, and again, there may have been more that weren't investigated. And is Don Terrell African American? He is. And were the two that were charged Caucasian? He is, and the state raises that. And I think that was argued that if you look at the photograph there, that would appear to be an African American penis, if you will. But again, I think the response to that is that we don't know that those two white men that were charged were the only men that Mr. Butler – those were just two that he – him also implicated, who were also charged. Thank you. Do I have time on rebuttal? Thank you. In Argument 1, defendant contends that the evidence was insufficient to establish the guilt of aggravated criminal sexual assault beyond a reasonable doubt. Defendant specifically contends that the only evidence directly linking him to the crime was the statements of Channing Butler in his December 9, 2015 interview with the police, and that these statements were directly contradicted by Butler's trial testimony. Here, as was mentioned, based upon the defendant's own testimony, the defendant was present at the assisted living center. The defendant did meet with Channing Butler, and the defendant did go to the room of an elderly woman. The question, then, is whether or not the defendant committed the offense of aggravated criminal sexual assault at this point. The state submitted other statements to the police, and the photographs showing the body part were sufficient to establish the defendant's guilt. Well, given that Mr. Butler took other photographs – Yes. What is it, other than race and the potential proximity, at the same time the photo may have been taken? What's the connection? Well, the photograph would be connected to the defendant. First of all, we have the testimony of Butler at the trial that the defendant was in the room. Right. We have the testimony that the other two people in the room were Butler and Helen C. And the defendant, Butler's testimony that the body part depicted in the photograph was not Butler's. So a necessary conclusion is that the body part was – He said that may not have been charged. I don't know if – in terms of credibility, I guess we're believing that he brought men there for sexual activity. And his own testimony says it was certainly well more than one, or two, or three. So what is it that connects the photograph taken on July 12th with the defendant being in the room? Particularly when the defendant admits opposite. Well, the defendant – At some point. We do have Butler's testimony. That defendant was in the room when this particular photograph was taken. Well, that – did anybody ask him if he ever took photographs of other – of African – There was no – no, there was no testimony to that effect. There was no testimony to that effect. Okay. The evidence was admitted pursuant to the appropriate stated section of the criminal code. And in its briefest, I decided three appellate court cases, people – Morrow, people D. Craig, and people D. Davis, support the position that Butler's prior inconsistent statements were sufficient to establish the defendant's guilt. In Morrow, which is the only case I'll mention or specifically mention, the appellate court specifically addressed the issue of whether, assuming argument of Lindo, there was no corroborative evidence of prior inconsistent statements. The issue supported the conviction. As noted in the stage brief, the appellate court stated, in the present case, the previous inconsistent statements alone were sufficient to prove the defendant's guilt beyond a reasonable doubt. So I would suggest that that refutes defendant's first contention that the prior inconsistent statements were insufficient to establish the defendant's guilt. Well, except that we know Channing Butler is a liar. We have to decide when he's telling the truth. We know that Channing Butler had encounters or attempted encounters with other men. That's right. And we know that his trial testimony, which is under oath in a courtroom, which allegedly would – some people think that makes it more likely that he'll tell the truth. He's saying the opposite. And you've got the problem of where the hell are the other photographs? Isn't it ineffective assistance of counsel? I know I'm skipping to another issue. Isn't it ineffective assistance of counsel not to inquire about and find out the other photos? If there are photos on his phone of other men, and he says, I took photos, he's admitting to that. And we ought to be able to determine if that's true. What if those other photos show an African-American male? There is no information that other photos will remain on his cell phone. But there's no information that they're not either. And I know discovery isn't in the file, but that's a question I would ask about ineffective assistance of counsel. I mean, I can't – I know, you can't – I can't answer the question. By asking it that way, I'm suggesting that maybe there's a problem with the guilty. I mean, the – yeah. Your Honor is very, very familiar with the standard for review and all that. And I'm not going to go through your – You don't have to. I don't have to. You're aware of it. Totally aware of it. I'm aware of it than I am. As far as the admission of the photographs, let me just go again through the statements and indicate why I think the photograph was properly admitted. Here, Butler testified that, first, the person in the photo was helping to see the victim. Second, the hand in the photo was Butler's. Third, another person's body part was also part in the photograph. Four, this was a penis. And the persons in the room were Butler, come and see the defendant. And six, Butler had taken the photograph. A necessary conclusion, not a permissive conclusion, but a necessary conclusion based upon that testimony is that the body part in question belongs to the defendant. There is no other way that that evidence can be interpreted, that that testimony can be interpreted. Well, wouldn't you agree the photograph was highly prejudicial as counsel has argued? It's highly probative. Okay. It's highly probative. Is it highly prejudicial? It is. But it's a question that the owner is aware of. It's a matter of balance and prejudice. Okay. I'm trying to figure out why it's probative. You say it's clear. It has to be defendant's penis, right? It's clear. That's what he's just arguing. So why does that come to the jury? I'm arguing that Butler's testimony indicated that the penis was defendant. Yes. Yes. The jury needed to see the penis to know that it belonged to a defendant. That's what you're arguing. Well. They needed to see that photograph. Couldn't just hear the testimony. Well, what I'm arguing is that the photograph was a penis in proximity to Helen's feet. Okay. Well, let me stop there. I have not seen the photograph. Was it touching the victim? That is what it indicated. Was it touching the victim? I'm sorry. It was close to the victim's face. Okay. It was close to the victim's face. By close, are you suggesting two, three, four, five inches, whatever? I couldn't give a specific. I think the term used was a proximity or whatever. I mean, it was close to the victim. So if the photograph was defendant, it clearly would be highly probative in establishing that defendant engaged in sexual acts with the victim. But that's exactly the opposite of Chan and Butler's trial testimony. And do you agree that the judge may have jumped the gun? I think that. Or misheard the evidence? No. I mean, I think that the syllogism, so to speak, dealing with Butler's testimony did indicate that the penis was defendant. There was no other way of inferring. But the court made a finding of fact that it was. Well, once he says that out loud in front of the jury, I mean, here's the captain of the ship, the guy in the black robe. He says, yeah, he identified it as the defendant's penis. Which he did. He did do that. By that testimony identifies the penis as being defendant's. There was no other way that can be interpreted. Counsel, you're saying something that's different, I think, than what actually occurred in court. Are you agreeing or disagreeing that the trial judge misstated Butler's testimony when he said, quote, he identified defendant as the person in the photograph, close quote? The only way that Butler's testimony can be interpreted, I would suggest, is that this was defendant's penis. I understand. And it's a logical inference that you are doing here. Just simply, though, what the court actually stated in the courtroom in front of the jury, wasn't that a misstatement? The count court statement, he said it was him, is not literally correct. That is true. That just means it's not correct. The word literally in front of it adds nothing. It was wrong. It was not a correct statement, yes. Okay. Well, if it is a syllogism, then it is to the person who understands the syllogism and who views it to reach the conclusion, the natural conclusion, that that's true. But instead, instead of letting the jury reach that conclusion, the trial judge reached it and told the jury. Yes. Counsel, if you would, because I think you're on shaky ground by trying to argue that it wasn't a misstatement. We're applying the forfeiture rule here, plain error doctrine. Sure. Assuming it was error on the part of the trial court to state the testimony, restate Butler's testimony in the way that it did, why was that then not plain error? So was the evidence closely balanced? Did it deny the defendant a fair trial? How do you address that? Does this then get to what you were saying? There was no prejudice because the logical inference was X, Y, and Z. That would be the follow-up. This was no unreversible error. The next step would be assuming that this was error. Okay, but your conclusion was error. Then the next question would be, was this reversible error? And I would suggest that it was not reversible error because the natural inference, the only possible inference from Butler's testimony, was that this was defendant's. Let's suppose the trial judge didn't say what he said. Yes. He doesn't say it at all. Yes. Is it within the realm of possibility that the jury could have returned a not guilty verdict? Well, the jury would be— I know they're entitled to do whatever— Sure. But without that statement, why couldn't jurors be asking the same questions that I'm asking? This perverted witness who has this odd hobby or fetish for inviting people there, and apparently inviting people there who may think they're going to have sex with a woman, that he's taken other photographs, he's had other men there, some of them may have been black, some of them may have been Asian, some of them were Caucasian. How does he remember—for one thing, how does he remember or got a good enough look at the defendant's penis that he can say without any—that it's irrefutable that that is the defendant's penis? Well, the trial court's statement was he said it was him. The trial court did not say the evidence establishes that it is his penis. The jury— But I've decided, I'm the trial judge, I've decided that it shows him. Otherwise, I wouldn't let the photograph in. I wouldn't let it be published. Well, he was basing—the admission question, I would suggest, Your Honor, is different from the weight question, which would be for the jury. The jury would make the decision subsequently. We have this conflicting testimony about who was in the room. The defendant says he wasn't, but who says he was. So it would be, therefore, a question for the jury. Wasn't the defendant's testimony that he was there and then left? He was—he said he was not in the room. Oh, but that he was there and looked in the room and saw what was being offered? That's correct. Turned around and left. Correct. Well, in an empty, vacant hallway and an open door, you could argue about whether the defendant was in. Butler said, well, yeah, he was in the room, but maybe he was in the doorway and turned around and left. And I understand these are all credibility questions, and these people testified before the jury, and we don't substitute our judgment for the jury's. We understand all that. But some of it seems troubling. Finally, I just would like to follow up on the question your Honor asked about photographs of the facility. The State's contention in this regard is that the defendant has failed to establish, or there is no basis for establishing, that the jury was misled by these photographs. The defendant has failed to establish that by reference to the record. On cross-examination, the defense counsel point out to the witness, obviously these are daytime photos so they don't necessarily depict what it would look like at night. Yes. And then ultimately, the jury still was confronted with the defendant's admission that he did enter the facility through what would appear to be institutional doors, and entering down a hallway that arguably does not have the appearance of a residence. And the testimony relative to the sign, and I don't mean to get off of this, but I'll stop at this point. The testimony is to the sign, but the sign was illuminated at night. So illuminated, excuse me, not illuminated, but illuminated at night. So that wouldn't change. I'll ask some further questions about it before I'll... I think not, thank you. Rebuttal, Mr. Loveless? Yes. Your Honor, to follow up on maybe some of the court's questions, I do believe that there would have been a positive, absolute identification. Yes, I took this picture, Don Frewell's in the room, that is Don Frewell's penis in that photo. Although highly prejudicial, I would agree with the state, it's highly progressive, too, because it identifies, at least, then there's a balancing to occur. And so on the admissibility side of it, and even in... This was subject to a pretrial motion in which the court discussed the fact that, well, you know, I'm not going to be premature for me to rule on this right now. I'm going to have to see if they can establish the necessary foundation and the identification in order to invent this photo. And unfortunately, because Channing Poplar didn't go the direction the state wanted Channing Poplar to go, they fell short. Unfortunately for Don Frewell Netter, the judge filled in the blank by, as the court, I think, had recognized, jumping the gun. As far as the appearance of the hallway, I would encourage the court to look at the photographs and testimony of the director, or former director, I think at the time he testified. These facilities are set up to look as close to home or close to apartment-like as possible. It's not, I guess, what we would normally think of as sterile, institutional. Yes, there are security doors, but it's not the normal sterile or institutional that we're used to, especially at Bigford. And the appearance of the hallway, it's interesting the court mentions that because if you look at the photograph of the hallway, because it's taken in the daytime, the jury sees a photograph of a hallway with old people in it. Not an empty hallway with pictures on the wall, maybe a plant on a stand, but a picture of people walking, people standing, and I think that is very misleading. Again, the state could have had nighttime photos, and I indicate in my brief that defense counsel should have objected and should have forced the state to do that. And or defense could have had nighttime photos. Or defense could have had nighttime and conducted his own investigation and offered those into evidence through his own witness, doctoral letter, or cross-examination. Your Honor, I didn't get to address, I know the Infective Assistance Counsel claim came up briefly in the attorney's argument, so I'll address some of those. Defense counsel in this case seems to be focused on anything but the front. The first witness or a guy gets on the stand, and I don't know if it's Mr. McClellan trying to be maybe funny, but when the state says, you know, how old are you, objects, Your Honor, she shouldn't have to say her age. Then apparently there's this pause because defense counsel recognizes Ms. Dye as a former neighbor. And when he has a chance to cross-examine her, which she didn't have much to offer. I'm not saying that Mr. McClellan would have missed an opportunity to ask important questions, but he is totally focused on whether or not he recognizes her, what house, state pronounced her name. And the court seems quite early on very impatient with Mr. McClellan, which I think ultimately leads to the issue of he said it was him that the court was just quick to ignore what Mr. McClellan had to say. On that single point in Mr. McClellan's ability to hear, he seemed to have gotten that one right. He objected, Your Honor, that's not what he said. What he should have said then next was, Your Honor, could we take a pause here? Let's read the record and see what the witness actually said, and then you can make your ruling. But he didn't do that, and it didn't appear that the judge in this case had any interest in hearing any arguments throughout the trial. Counsel fell short on cross-examining Mr. Butler on his own independent investigation, on his ability to understand the electronic information. He admits that he admits in front of the jury he has no idea what this is about, asked if one of the witnesses can help him with his own cell phone, operate his own smart phone. He had trouble making time to get to his trial, so I don't think there's multiple instances where a defense counsel fell short and is credited to the impact of the defense counsel. Thank you. Thank you, counsel. We'll take this matter under advisory.